564 A.2d 952

**COMMONWEALTH of Pennsylvania**

v.

**Edward BLOUNT, Appellant.**

Superior Court of Pennsylvania.

Submitted July 24, 1989.

Filed Sept. 25, 1989.

604

Mitchell S. Strutin, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com.

Before ROWLEY, OLSZEWSKI and HESTER, JJ.

OLSZEWSKI, Judge:

This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after conviction for robbery of the first degree. On appeal, the following issues are raised:

I.  The trial court erred when it precluded trial counsel from cross-examining police officer Long concerning the police department's internal affairs bureau's investigation of the proceeds of the robbery which were missing so as to demonstrate bias or motive to fabricate testimony.

II.  The trial court erred when it refused to instruct the jury concerning the crime of robbery as a felony of the third degree.

III.  The trial court erred when it refused to instruct the jury in accordance with the defendant's request concerning the use of prior inconsistent statements as substantive evidence.

IV.  The defendant is entitled to a new trial as a result of prosecutorial misconduct.

V. The trial court erred when it permitted testimony which stigmatized the defendant.

VI. The trial court improperly questioned commonwealth witnesses so as to rehabilitate the witnesses and/or express the court's opinion concerning the credibility of the witnesses.

Brief of appellant at i. For the following reasons, we affirm.

The facts of the instant case were accurately summarized in the opinion of the trial court as follows:

On September 29, 1987 at approximately 2:30 p.m. in the vicinity of 3300 Ridge Avenue, Philadelphia, Zuline Harrison was thrown to the ground and her pocketbook was taken from her.

At trial, the Commonwealth first presented the testimony of Lance Spencer, who stated that on the date and time in question he was travelling on the East River Drive in the vicinity of 33rd Street when he observed a struggle. He slowed his vehicle and observed the defendant push a woman to the ground, grab her purse and begin to run into the woods of Fairmount Park. He further testified that he stopped his vehicle, and began to chase the defendant for approximately 200 feet prior to apprehending him and detaining him for police. Mr. Spencer also stated that he never lost sight of the defendant during the chase and observed him going through the pocketbook while running. He further observed him taking an undetermined amount of paper money from the bag and placing it in his pants pocket. During his testimony Mr. Spencer identified the defendant, Edward Blount, as the man he observed struggling with the woman whom he also identified.

The Commonwealth next offered the testimony of Robert Swinton, who stated he was present in the car with his friend, Lance Spencer, when they observed the struggle. Mr. Swinton also identified the defendant, Edward Blount, as the same man he observed taking a woman's handbag. He also identified the complainant as the same

woman he encountered that day. His testimony in all other aspects was cumulative and corroborated that of Lance Spencer.

The testimony of Officer Paul Long was next offered by the Commonwealth. Officer Long stated that he was on routine patrol when he was approached by a park worker. As a result of that conversation, he proceeded to an area approximately sixty yards downhill from his present position where he observed two men restraining a third man who was face down on the ground. At that time the officer placed the third male under arrest and called for back-up assistance. From underneath the defendant's body a pocketbook was recovered which the Officer testified he returned to the complainant. Also found in the defendant's front left pocket was a large bundle of United States currency which the officer testified he replaced into the defendant's pocket.

For the defense, Detective Fred Litchendorf was called to testify that as part of the investigation in this case he interviewed Mr. Lance Spencer. The substance of that interview as recorded on Police Report 75–49 was read into evidence. This statement was offered to show that Mr. Spencer's prior testimony that he witnessed the defendant push his victim to the ground was not recorded in that statement. Detective Litchendorf was also called to testify regarding the search of the defendant, which he conducted at police headquarters as regarding the fact that no money was found on his person at that time. The defense presented no further evidence.

Trial court opinion at 1–3.

Following trial before a jury, appellant was convicted of first degree robbery. Post-trial motions were filed and denied, and appellant was sentenced to a term of imprisonment of five-to-ten years. A petition for reconsideration of sentence was filed and denied. Thereafter, appellant filed an appeal to this Court. New counsel was appointed and, pursuant to the court's direction, filed a statement of matters complained of on appeal. This statement raised a

number of matters including an alleged ineffectiveness on the part of trial counsel. Pursuant to this Court's remand order of October 12, 1988, the trial court convened a hearing on this claim. This case was again remanded by this Court by order dated March 8, 1989, so that appellant, by agreement of counsel and the trial judge, be resentenced to a term of incarceration of four-to-ten years for robbery as a felony of the second degree.

Appellant initially contends that the trial court improperly precluded cross-examination of the arresting officer regarding the apparent loss of the money that appellant stole from the victim. He argues that he should have been permitted to establish, by way of cross-examination, that the Internal Affairs Bureau (IAB) of the Philadelphia Police Department initiated an investigation. By refusing to allow him a complete examination in this regard, appellant claims he was deprived of his opportunity to establish that the police officer had a motive to testify falsely against him in order to protect himself against any possible sanction by the IAB.

The Commonwealth counters that appellant's argument is flawed in several respects. First, it claims that the court did in fact allow defense counsel to establish the occurrence of the IAB investigation through the direct examination of the detective assigned by the Bureau to conduct the inquiry. Second, it argues that defense counsel made specific note during closing argument of the investigation and the possible motive of the police officer to testify falsely. Moreover, the Commonwealth claims that the facts of the instant case preclude any inference of a motive to testify falsely on the part of the police officer. Finally, the Commonwealth asserts, *arguendo*, that any error in this regard was harmless and could in no way have contributed to the verdict.

It is well-settled that a defendant has the right to establish through cross-examination that an adverse witness has a bias against him, or at least an interest in the outcome of the trial. It is, however, equally clear that the scope of such examination is controlled by the discretion of the trial judge whose decision will not be overturned absent

palpable error. *Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985); *Commonwealth v. Ross*, 345 Pa.Super. 571, 498 A.2d 972 (1985). Moreover, the order through which a party seeks to prove his case is also a matter within the sound discretion of the trial judge and will be upheld on appeal absent an abuse thereof. *Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246 (1988); *Commonwealth v. Mokluk*, 298 Pa.Super. 360, 444 A.2d 1214 (1982). With these standards in mind, we must reject appellant's initial claim.

Instantly, appellant's contention that he was unable to raise the inference of bias on the part of Officer Long is belied by the record. The trial court did, in fact, allow appellant to establish the occurrence of the IAB investigation through his direct examination of the assigned detective, who was called as a defense witness at trial. Neither the detective, nor the prosecution denied the existence of the investigation, and the defense took full advantage of this fact in his summation to the jury. Moreover, the evidence adduced at trial precludes any inference of false testimony on the part of Officer Long. Lance Spencer, a witness for the Commonwealth, testified that he had seen appellant take a wad of money from the victim's purse and place it in his pocket. This testimony was bolstered by Officer Long, who testified that he had removed the wad and immediately replaced it in appellant's pocket. Detective Litchendorf, in turn, related his interview of Officer Long shortly after the arrest, in which Long had stated that he failed to seize the money. Officer Long's admission triggered the subsequent investigation, and his trial testimony merely reiterated his prior disclosure, rather than exculpate him. Thus, it is clear that the fact of Officer Long's predicament with the IAB could in no way have influenced his testimony at trial.[1] We therefore reject

1. Indeed, as the Commonwealth correctly points out, if Officer Long had sought to cover up his responsibility for the lost money, it seems likely that he never would have informed Detective Litchendorf shortly after the arrest that he had discovered, but declined to seize, the money in appellant's pocket.

appellant's initial claim.[2]

Next, appellant submits that the trial court erred in failing to give an instruction to the jury as to robbery of the third degree. He contends that, accepting the Commonwealth's evidence as true, it was entirely possible that the jury could have concluded that he did nothing more than attempt to cause bodily injury to the victim or to put her in fear of immediate bodily injury. As such, appellant posits that he was entitled to a jury instruction concerning robbery as a felony of the third degree. We disagree.

Appellant is not entitled to a charge of robbery as a felony of the third degree simply because it constitutes a lesser-included offense of robbery as a felony of the first and second degrees. Rather, such an instruction is to be given only where the evidence in the record would permit a jury to rationally find a defendant guilty of the lesser-included offense but not the greater offense. *Commonwealth v. Thomas*, 376 Pa.Super. 455, 546 A.2d 116 (1988) (*en banc*).

Here, the trial judge quite properly declined to instruct the jury on the lesser-included offense of third degree robbery. That crime is defined as the perpetration of theft by use of "force, however slight." 18 Pa.C.S.A. § 3701(a)(1)(v). Under this standard, appellant's argument that the jury could have reasonably found that he attempted to cause bodily injury to the victim, or place her in fear of immediate bodily injury, is misplaced for such a finding would constitute robbery of the second degree. *See* 18 Pa.C.S.A. § 3701(a)(1)(iv). Moreover, the only evidence ad-

2. In support of his argument, appellant relies on *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Commonwealth v. Peetros*, 517 Pa. 260, 535 A.2d 1026 (1987); *Commonwealth v. Dawson*, 486 Pa. 321, 405 A.2d 1230 (1979); *Commonwealth v. Sullivan*, 485 Pa. 392, 402 A.2d 1019 (1979); *Commonwealth v. Shands*, 338 Pa.Super. 296, 487 A.2d 973 (1985); and *Commonwealth v. Ervin*, 262 Pa.Super. 322, 396 A.2d 776 (1978). In each of these cases, however, reversible error was found because the defense was precluded from introducing *any* evidence of a possible motive on the part of a prosecution witness to testify falsely. They are, therefore, distinguishable from the instant case.

duced at trial regarding the degree of force used in the theft—that of Lance Spencer—indicates a level of force in excess of that contemplated by § 3701(a)(1)(v). The witness testified that he observed a struggle between appellant and his elderly victim in which appellant placed his hands on the victim's chest while shoving her to the ground with such force as to cause her skirt to fall off. Under these circumstances, we are in agreement with the trial court that the jury could not have reasonably concluded that the robbery was committed by the use of force however slight. Accordingly, this claim is rejected.

Third, appellant argues that the trial court erred by failing to specifically instruct the jury that it could consider any prior inconsistent statements of a witness as substantive evidence, pursuant to our Supreme Court's announcement in *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). We find appellant's reliance on *Brady* to be misplaced.

In *Brady*, the Court held that a statement made by a prosecution witness shortly after discovery of a murder that the defendant was the guilty party, was admissible as substantive evidence of guilt when the witness later recanted this statement at trial. This decision overruled prior law in which a witness's prior inconsistent statement was admissible only for purposes of impeachment, and the trial court was required to instruct the jury accordingly. *See Commonwealth v. Waller*, 498 Pa. 33, 444 A.2d 653 (1982). After the *Brady* decision, prior inconsistent statements could be used either to impeach or as substantive evidence. The case does not mandate a specific instruction as to both forms, it is enough that the trial judge does not limit the jury's consideration of these statements for impeachment purposes only.

Instantly, our review of the record indicates that the trial court instructed the jury to consider the witness's prior inconsistent statements in evaluating credibility but did not limit the examination for impeachment purposes only. Because the court did not preclude the jury from considering

these statements as substantive evidence, we find no error in its instructions.[3] Appellant's claim to the contrary must, therefore, fail.

Fourth, appellant contends that three portions of the prosecutor's summation amounted to misconduct. He argues that the prosecutor stigmatized appellant by referring to him as the "very worst in our city," as opposed to the two eyewitnesses that were described as "the best of our city." Further, it is claimed that the prosecutor expressed his personal opinion as to appellant's guilt. Finally, appellant complains that the Commonwealth's summation shifted the burden of proof to the defense when the prosecutor inquired as to appellant's failure to call the victim as a defense witness.

In response, the Commonwealth counters that the characterization of appellant and his captors was fair in light of defense counsel's argument that the Commonwealth witnesses had perjured themselves at trial and had used excessive force in apprehending appellant. It is also submitted that the Commonwealth's alleged personal expression of guilt was nothing more than a proper summation of the evidence. As far as appellant's burden of proof, the Commonwealth stresses that the prosecutor made it clear that appellant has no such burden, and argues that the statements made during closing remarks were a fair rebuttal to the defense argument that the victim would have exculpated appellant had she been called as a witness.

As our Supreme Court has recently reaffirmed: [E]ven where the language of the district attorney is improper, a new trial is not necessarily required. The

---

3. Even if we were to conclude that the instructions were erroneous, we would not be in a position to grant appellant his requested relief. Here, the inconsistencies were not in dispute, as the prosecutor conceded in his summation that Mr. Spencer's trial testimony was different in some minor details from his statement given to police and his testimony given at the preliminary hearing. Where such is the case, even if we were to conclude that the court erroneously instructed the jury, the error would be harmless as appellant has no burden of proof, thus no need for substantive evidence. *Commonwealth v. McMillan,* 376 Pa.Super. 25, 39–40, 545 A.2d 301, 308 (1988).

language must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." The effect of such remarks depends upon the atmosphere of the trial.

*Commonwealth v. Graham,* 522 Pa. 115, —— ——, 560 A.2d 129, 130 (1989), *quoting Commonwealth v. Stoltzfus,* 462 Pa. 43, 61; 337 A.2d 873, 882 (1975) (citations omitted). Moreover, the prosecutor is entitled to argue any legitimate inferences which arise from the evidence and "must be *free* to present his or her argument with 'logical force and vigor.'" *Commonwealth v. Smith,* 490 Pa. 380, 387, 416 A.2d 986, 989 (1980), *quoting Commonwealth v. Cronin,* 464 Pa. 138, 143, 346 A.2d 59, 62 (1975). In this regard, reversal of a conviction would be improper where the prosecutor's remarks are "motivated by and [are] commensurate with" those of the defense. *Commonwealth v. Gwaltney,* 497 Pa. 505, 513, 442 A.2d 236, 240 (1982), *quoting Commonwealth v. Stoltzfus, supra.* Whether these remarks are prejudicial is a question for the trial judge whose determination will not be overturned absent an abuse of discretion. *Commonwealth v. D'Amato,* 514 Pa. 471, 526 A.2d 300 (1987).

■ Turning to the first of the suspect statements, our review of the record indicates that the defense did indeed comment extensively regarding the credibility of the prosecution witnesses and challenged their use of force in apprehending appellant. Under these circumstances, we find no misconduct in the prosecution's characterization of the parties inasmuch as the uncontroverted evidence indicated appellant's strong-arm robbery of an elderly woman. We therefore reject this claim of error.

■ As to the Commonwealth's alleged improper expression of appellant's guilt, while we agree that such a remark is uncalled for, we do not believe that appellant is entitled to a new trial. In making this determination, we again rely on the overwhelming evidence against appellant, and conclude

that such a statement, taken in context of the entire trial, could not have contributed to the verdict. Accordingly, we reject appellant's claim for relief on this ground.

Nor do we find merit to appellant's final claim regarding the prosecution's closing statements. Our review of the record is consistent with the Commonwealth's position that in no way was there an attempt made by the prosecutor to shift the burden on appellant. The remark of the prosecutor was in direct response to defense counsel's assertion that had the victim testified, it would have exculpated appellant. Moreover, the record reveals that the prosecution stressed that appellant had absolutely no burden of proof whatsoever. Under these circumstances, we are in no position to grant appellant a new trial as he has failed to demonstrate how this statement could have affected the outcome of his trial. This claim is therefore rejected.

Next, it is submitted by appellant that the trial court erred when it admitted the testimony of one of the eyewitnesses and of the assigned detective regarding appellant's physical condition at the time of arrest. Appellant claims that the prosecution's elicitation of testimony from the witnesses that appellant had open sores on his legs which led them to believe he may have the disease AIDS, was merely an attempt to introduce irrelevant evidence for the jury's consideration. He contends that this testimony was introduced solely to blacken his reputation. In support of his argument, appellant points to the case of *Commonwealth v. Satzberg*, 358 Pa.Super. 39, 516 A.2d 758 (1986).

In *Satzberg,* the prosecutor called appellant a "bum" and a "drug addict" in his opening statement. Contrary to those assertions, no evidence was offered at trial to show that drugs were connected in any way to the crime, nor did the reference to appellant as a "bum" have any relevance to the issues before the jury. Under these circumstances, this Court granted the defendant a new trial. Here, by contrast, the record reveals that the prosecution did not elicit testimony in regards to appellant's physical condition until defense counsel attempted to show, on cross-examination

and during appellant's case-in-chief, that one of the eye-witnesses used excessive force in apprehending appellant, and also that the arresting officer engaged in some impropriety by claiming to have failed to seize the victim's money.[4] Because we find this challenged evidence clearly relevant to rebut appellant's claims of improper conduct, appellant's reliance on *Satzberg* is misplaced. Moreover, our review of the complained of testimony does not reveal a situation in which the prejudicial effect of this testimony outweighed its probative value. *Commonwealth v. Dollman*, 518 Pa. 86, 541 A.2d 319 (1988); *Commonwealth v. Millard*, 273 Pa.Super. 523, 417 A.2d 1171 (1979) (relevant evidence must be admitted unless its prejudicial effect clearly outweighs its probative value). Accordingly, we find this claim to be without merit.

■ Finally, appellant contends that the trial court improperly questioned Commonwealth witnesses so as to rehabilitate them or express the court's opinion concerning their credibility. We have reviewed the complained of inquiries in the record and are satisfied that appellant's arguments are lacking in merit.

Prior to trial, pursuant to defense counsel's motion *in limine*, the trial court suggested and the prosecution agreed not to elicit testimony pertaining to appellant's condition at the time of the arrest or the fact that police discovered a hypodermic needle in his possession. The prosecution complied with this request; however, counsel for appellant, on cross-examination of the arresting officer, attempted to show that the officer departed from standard police practice—seizing all evidence discovered at the scene and placing these items on a property receipt. It was

4. The defense attempted to show that one of the witnesses, Lance Spencer, restrained appellant by placing a foot on his neck and holding him in that position until police arrived. On redirect examination, the witness testified that he held appellant this way because he was afraid that appellant may have had AIDS because of the open sores on his legs. Further, during appellant's case-in-chief, defense counsel attempted to show impropriety on the part of the arresting officer regarding the loss of the victim's money. In response, the Commonwealth attempted to show that because of appellant's condition, the police officer was fearful of remaining in contact with him.

counsel's intention to show bias on the part of the officer and to raise an inference of impropriety, namely that the officer had stolen the victim's money. When the trial court tried to deflect the thrust of defense counsel's inquiries in order to preserve its previous ruling, the following took place:

Q. And you had reason to believe when you took that money out of the pocket, did you not, that that money belonged to Miss Harrison; is that correct?

MR. FREED: I have to object at this point, judge.

THE COURT: Look, he said—please. He searched him looking primarily for weapons. He found money and put money back in the pocket.

Is that correct? That's what you said?

THE WITNESS: Yes.

BY MR. SODROSKI:

Q. You took two items, the purse and the pouch, did you not, that were on the ground?

A. The purse and the pocketbook.

Q. Okay. You took those and did you ever put those on a property receipt?

A. No, I didn't. I returned them to the complainant.

Q. Okay and the money, how come you didn't return that to Miss Harrison?

MR. FREED: Objection. At what time?

THE COURT: He testified he put it back in his pocket.

BY MR. SODROSKI:

Q. You have been a police officer for how long?

A. Almost 15 years.

Q. Now, you know, don't you, that when somebody is arrested if they have evidence on their person. It's important for the police to get that evidence and secure it so that later it could be used if the case goes to trial?

MR. FREED: Objection.

BY MR. SODROSKI:

Q. Is that correct?

THE COURT: I'll sustain that.

MR. SODROSKI: Judge, there's nothing improper about that.

THE COURT: Counsel, you know as well as I do that he is not supposed to conduct a search of that type.

MR. SODROSKI: Judge, I don't know anything of any such nature.

THE COURT: You know. He told you that he put the money back in his pocket.

Now, if you have evidence that that's an improper thing, you can bring it in. But don't argue with the witness as to whether he did it correctly or not.

MR. SODROSKI: Judge, I'm not arguing that it was improper. It's a matter for the jury to decide.

MR. FREED: He is certainly arguing that it's improper. He's trying to raise that inference.

THE COURT: He's testifying to what the facts are.

BY MR. SODROSKI: Do you have that money here today?

MR. FREED: Objection.

THE WITNESS: No, I don't.

THE COURT: He saw the money, he put it back in his pocket, then he turned him over to other officers.

Is that correct?

THE WITNESS: Yes, sir.

Notes of testimony, January 15, 1988, at 112–115.

Appellant concedes that it is within the trial court's discretion to question witnesses so long as the trial judge does not show bias or feeling or be unduly protracted. *Commonwealth v. Watts*, 358 Pa. 92, 56 A.2d 81 (1948). Indeed, in his brief, appellant cites the following language contained in the case of *Commonwealth v. Myma*, 278 Pa. 505, 508, 123 A. 486, 487 (1924):

Judges should refrain from extended examination of witnesses; they should not, during the trial, indicate an opinion on the merits, a doubt as to the witnesses's [sic] credibility, or do anything to indicate a leaning to one side

or the other, without explaining to the jury that all these matters are for them.

Instantly, the trial court carefully instructed the jury both prior to the commencement of the evidentiary phase, and again during final instructions, that it should draw no inferences regarding the court's own beliefs about the case from any questions posed to the witnesses by the court. Appellant cannot now contend that the jury simply disregarded these instructions and chose to assume that the court had a bias against appellant. *Commonwealth v. Britton*, 334 Pa.Super. 203, 210, 482 A.2d 1294, 1301 (1984) (*en banc*) (cautionary instruction that jury should not assume judge's opinion regarding credibility of witnesses precluded finding of prejudice). Moreover, the questions asked of the police officer were directed to cut off an improper line of questioning by defense counsel, and were entirely neutral, consisting of questions previously put to the officer by either counsel. *See Commonwealth v. Britton, supra*, 334 Pa.Superior Ct. at 210–211, 482 A.2d at 1301. Under these circumstances, we cannot conclude that the comments raised by appellant require the granting of a new trial.

Judgment of sentence affirmed.